Thank you, Your Honors. My name is Edward Griffith, and I represent the plaintiff appellant, Edyta Gryglak. Your pronunciation was spot on. And we're here on a breach of contract case that also asserts a claim under the Federal Debt Collection Practices Act. It was dismissed last year by the district court in granting the second motion for summary judgment filed by the defendant, Wells Fargo and HSBC. There are three bases that we challenge this order. The first is that the second summary judgment decision was based primarily on a Rule 37 sanction precluding any evidence of damages arising out of purported discovery noncompliance. The odd thing about that is that the discovery noncompliance that the court found warranted this very extreme sanction took place years before the decision. In essence, the same arguments were brought before the district court back in 2018 and 2019 when the defendants made their first motion for summary judgment. All of the same issues were briefed, and the district court denied that motion, finding that there was issues of fact that precluded summary judgment. Surprisingly, completely ignoring all of the parties' arguments with respect to damages and also ignoring the defendant's challenge asking for a Rule 37 sanction. The three bases that we believe that the district court erred, clearly erroneous, abuse of discretion in issuing this evidentiary preclusion. It's a very high standard, but we believe the facts of this case are quite stark and that we meet that standard. Secondly, with respect to the dismissal of the Federal Debt Collection Practices Act, that was dismissed a year or so earlier, a couple of years before, actually four years before. The case has been around for a while. In 2018, as a matter of law on the defendant's motion for dismissal, the district court dismissed the FDCPA claim. And we think that was a mistake of law. The issue was that the district court found that an amendment would be futile because as a matter of law, none of the defendants fell within the statutory definition of debt collector. And if that is the case, then the FDCPA claim fails because it only applies to debt collectors. We think that the court erred as a matter of law on that, and that based on the undisputed facts in the record, the defendants, at least two of them, Wells Fargo and HSBC, do fall within the definition of debt collector. The definition, to be fair, is a bit tricky. Let me be clear. Are you still introducing as to what you're going to talk about, or are we now into one of the issues? Good point, Your Honor. I was going a little too far in the second issue. I'm still on my introduction. Well, you're down to now 11 minutes and 48 seconds. Why don't you tell us why on the breach of contract claim the district court erred in imposing Rule 37. Not imposing. There were automatic sanctions here because it was for a violation of Rule 26, failure to disclose damages as you're required to do voluntarily. Sure. It was an automatic sanction. Yes, that's correct. And the automatic sanction arose from the plaintiff's failure to file Rule 26A initial disclosures. And we say that that failure, there's no question that that happened, but we say that that was both substantially justified and also harmless because, in this case, nobody complained about the failure to serve initial disclosures. And, indeed, the only document submitted to the court that had a deadline for initial disclosures was the joint discovery plan that was jointly filed on October 16, 2017. The district court actually denied that and issued its own order imposing its own dates and completely ignored the Rule 26A disclosures. The district court isn't required to set cutoff dates. You're right. For disclosure. The district court was just setting a scheduling date for when completing discovery and when you have to file your dispositive motions and whatnot. Yeah, that's correct. The disclosures under Rule 26A are separate, and they're very clear about what you have to do, and you didn't do it. That's right. But the question is whether that was either substantially justified. Well, you keep saying that, but what was the substantial justification? There was nobody complained about it. Nobody complained about it. Well, that doesn't really add up to substantial justification. All right. Well, then, in that case, because that is the argument. There's no other argument other than nobody mentioned it. We had actually. So then parties are just free to ignore Rule 26A. I mean, well, it's there. We're not going to play. We're not going to, you know. It's kind of burdensome. We don't really want to do it. So, you know, therefore, nobody does it, and we're substantially justified in failing to comply. Not at all, Your Honor. That doesn't work. Of course it doesn't, and it wasn't the case that we ignored it. It was that we overlooked it. There was an inadvertent overlooking of the requirement to file initial disclosures, and the only justification for that was that nobody said anything about it. Well, like it's a new rule. I mean, the rule's been there for a long time now. So. I agree, Your Honor. Let me move on, then, because I don't think my substantial justification argument is making any progress. But in that case, it was harmless. And why was it harmless? Because the parties actually got along incredibly well and cooperated in this case in discovery. And I think that should be encouraged. And in this case, it happened. We filed several. Let me get specific, if I could. Yes. I think the complaint has been, or will be in a few minutes, that it was difficult to pin down or ascertain just what plaintiff had in the way of a damages case. And I've got to tell you, I don't understand what damages plaintiff can purport to have suffered. So can you tell me? Sure. And the damages are set forth in plaintiff's initial response to interrogatories, which was filed on. . . Just get to the substance. I know that you cited two as parts of the interrogatories. I can't figure out how she can claim to have been injured. So how was she injured? Your Honor, we maintain that the primary damage in this case is the excess charges that Wells filed. Has she paid that excess charge? Indeed, has she paid anything since 2014? She has not, Your Honor. So how can she possibly have been injured? You're complaining about somebody giving a statement which would overcharge, and if maybe she'd paid them, she'd have a case. But she didn't pay them, so how did she suffer any injury? She hasn't made regular mortgage payments, but she has paid on this mortgage. She paid over $26,000 back in 2013 or 2014. And just a year or two ago, she paid $160,000. Is that from the bond? It's from the bond, exactly. Okay. So let's focus on what it is she claims to have been overcharged. And if I understand correctly, it's what was labeled as, like, escrow fees, the taxes and insurance? That's correct. And so why isn't that an obligation? I mean, it couldn't have been an obligation that was discharged through bankruptcy because it accumulates over time. And those weren't obligations that flowed from something that happened before her bankruptcy discharge. So how is it she can maintain an argument that just because I'm only required to pay $1,800 and something on the loan, I don't have to pay for insurance and I don't have to pay taxes anymore? How could she have been injured if somebody else, following the deed of trust terms, made those payments on her behalf so she didn't have to make those payments? What's the injury? Because under Bankruptcy Code 1141, the confirmation of the plan basically eliminated any ---- No. It clearly didn't. But more than that, even if you can maintain that argument, that's a future obligation. The discharge couldn't have done anything. To say you're not saying to the county, for example, Clark County, not saying to the county that I don't obligate, I don't have to pay taxes anymore because the bankruptcy court said I only had to pay $1,800 a month on the loan, and as a result I'm absolved of all tax and insurance payments, that can't be right. I agree. Okay. And so, but even assume for a moment you can say that the obligation to pay the payment to the bank is capped at that. How has she been injured by the bank paying on her behalf the taxes and insurance that otherwise she would be obligated to pay herself? Well, it's the voluntary payment, Dr. Nevada, Your Honor. That's the argument. I'll assure you that's unpersuasive to at least one judge. All right. I understand then. All I can say is that that is the argument, and I think I agree with you that it seems like a harsh result. But on the other hand, this is bankruptcy. No, it's not. These are obligations that accrued subsequent to the discharge. Am I wrong about that? No. Then how could the discharge absolve her of having to pay taxes and insurance? It didn't. Okay. But it also, it absolved her of paying escrow charges to Wells Fargo. How? The deed of trust is still in place. You're not saying that if she stops paying the $1,800 a month, which, in fact, she has done, they are forbidden from seeking relief because there's no longer a mortgage applicable to the property. It's not a secured debt anymore, and that's plainly not what the bankruptcy court ruled. Clearly, it's a secured debt. But all of the terms and provisions of the deed of trust that were not incorporated into the plan, we say, are no longer valid. Well, you can say it, but. . . Well, the only thing that we can rely on is the plain meaning of Bankruptcy Code 1141, and we think that's fairly clear. Why aren't there more cases involving this issue? There's that one in Florida, and the judge certainly. . . And you castigate defendants for citing that one case from Florida, and yet you cite nothing at all. Well, there aren't any cases. Because I suspect this position isn't staked out very often. I think that's right, and why? Because usually a bank that has a mortgage, a mortgagee, has lawyers that defend itself in bankruptcy, and they make sure that the plan of reorganization incorporates the mortgage terms that they believe is important. In fact, they're probably not worried about the argument that you're now making, so. . . That Florida case, it basically, at one point, it does say that the debtor's obligation to pay advance escrow was terminated on the confirmation date. Yet at the same time, without any analysis at all, it says that the terms and conditions of the mortgage are somehow incorporated into the plan, even though the plan didn't say that. Can we spend a moment on this issue of your request to file an amended complaint? Because I guess my question there is why Schlegel doesn't just foreclose the argument that you're making, if you could just spend a minute on that. Sure. The case law that I think is pretty well settled is that the normal procedure for granting a motion to dismiss should be it is without prejudice to refile. The only exception to that under the case law is if the decision is made that an amendment would be futile because there's no way of falling within a legitimate cause of action. So we take the position that there was no need for us to actually file a proposed amended complaint because it was the district court's obligation to give us that right, and it did not. Well, right, but I guess what I'm asking is why doesn't Schlegel make any amendment here futile? I mean, how can HSBC qualify as a debt collector here? I'm sorry, you got a little bit broken up. I'm sorry, what I'm asking is how HSBC can qualify as a debt collector here. Right. We have two arguments for each of the two main defendants with respect to HSBC. HSBC, in this case, is acting as trustee for a New York common law trust, which has a funny name. It's Wealth Fargo Asset Backed Securities Series 2006-something. And that's a common law trust in which HSBC became the title holder to a bunch of mortgage loans and notes under this pooling agreement. And so their job is to enforce those mortgages. Now, hopefully most of them, everyone gets paid and there's no need for enforcing the security agreement, but for those that don't, their job is to enforce the security interest. And under the statute, one of the parts of the definition is that if a company regularly Let me get the actual language. It's basically if a person uses the interstate mail in a business that the principal purpose of which is the enforcement of security interests, that that entity is a debt collector. And that's in the statute at 18 U.S.C. 1692A, subparagraph 6. And so because HSBC was involved in the business as trustee for this New York common law trust of enforcing the security interest, it falls squarely within that provision of the definition. And that's with respect to HSBC. Would you like me to address Wealth Fargo? Well, you're over time, so why don't we hear from them? I'm over time. My gosh. I'm really sorry. I thought I had one more minute. All right. Well, I'll be back. I'll give you a minute for a rebuttal. Thank you. Did you say what? I'll give you a minute for rebuttal. Let's hear from the other side. Oh, yeah, absolutely. Thank you. Good morning, Your Honors. May it please the Court. My name is Kelly Dove, and I represent appellees who I will jointly call Wealth Fargo unless there's cause for more specificity. I'd like to hit the high points, I hope, starting with the 37C issue. On our second motion for summary judgment, the district court did strike the declaration of Mr. Newman and disallow any further evidence of damages. The district court was well within its discretion in making that determination, partly to start with the first motion for summary judgment, which the district court did omit to decide the damages issue at that time. Was it raised? It was raised, yes. And we don't candidly have an explanation for why it wasn't decided there, but in the district court's order on the second one, he expressed some frustration with the convoluted history of the case and sort of said that's why he had overlooked it. So it was raised in both. So what we call the escrow theory of damages was raised for the first time in opposition to the first motion to dismiss, which was months after the close of discovery by itself. At that point, the district court did not strike the supplemental declaration of Mr. Newman and just noted that it didn't consider it in deciding the motion. That was the motion for summary judgment, not a motion to dismiss it? That was the motion for summary judgment, yes. So that discovery had already been completed, and this was a post-discovery motion for summary judgment. And then there was an application for a preliminary injunction in TRO to stop the foreclosure sale, which then led to an appeal to this court to stop the foreclosure sale and so on. And when that was remanded, we went back to the court to request that the court allow us to reopen the dispositive motion deadline and file a new motion for summary judgment just on that issue of damages that the court had not previously addressed. And then in opposing that motion and filing their own motion, they came up with what we were calling in our briefing the new damages theory, where there were all sorts of new theories about she couldn't refinance and get a better rate in 2021 or 2020 when rates were good during COVID because of these issues that had happened with her loan long ago. And again, not only was this late, the evidence is not competent. This is Mr. Newman, her significant other, who's opining that this affected her creditworthiness, and she would have been able to obtain a 2.3 percent mortgage if only we had not run into these issues in 2011 and 2012 with cashing her checks. So again, we moved to strike that declaration, citing just how incredibly late it was. It hadn't come up before in any form. And at that point, the district court found that that was clearly barred by 37C. The district court did not need to reach bad faith here in our view because under Hoffman v. Construction Protective Services and Yeti by Mollie, this is a self-executing sanction, as Your Honor pointed out a few moments ago. But in a, I suspect, belt and suspenders approach, the court nonetheless reached the issue of bad faith and found that there was bad faith here, found that this had harmed Wells Fargo, that we were chasing a proverbial moving target in figuring out what the damages were. And I would note that if you affirm on that basis, you really don't need to reach the substance of the damages here, which we also find perplexing, particularly because while the briefing repeatedly states that these escrow, these statements that reflect escrow payments constitute damages, since Ms. Griglak never paid any of it and hasn't paid since 2014, she can't possibly have been damaged by the fact that Wells Fargo was making these payments out of pocket to the tune of something like $71,000 by now. Well, there was money taken apparently from the bond. I don't really understand the details, but $160,000 or something like that? Yes, so what happened is Wells Fargo did originate this loan and before Ms. Griglak went into bankruptcy, and it's going back a little ways, has always collected the escrow payments, as many mortgagors do, so has always paid Ms. Griglak's property tax and so on from escrow payments throughout the life of the loan. Following bankruptcy, she stopped making those payments in 2014, but Wells Fargo, of course, to protect its interest in the property and the property itself, continued paying those. We didn't get the bond until the injunction appeal, and so late in this litigation, about maybe two years ago, when they appealed the district court's denial of an injunction, it came to this court, and this court also, I think, granted a stay pending appeal, but required that she post a bond that would be determined by the district court. So the district court did order her to post a bond, she posted a bond, and then subsequently this court affirmed the denial of the preliminary injunction. So we've had some bond money since the termination of that appeal. So I'm not entirely clear, and it's not in the record, exactly how that bond money has been used so far, but before that time, Wells Fargo was making those payments out of pocket. And I just wanted to address briefly some of the claims made in the briefing that Wells Fargo was somehow at fault for their not serving initial disclosures or complying with their discovery obligations. While there's a long discussion about Wells Fargo's initial disclosures, we did serve initial disclosures. They're in the record at 662-68. There's a certificate of service indicating they were mailed in late 2017. There's a declaration at page 671 indicating that my colleague and counsel in the trial court had handed a copy during Ms. Griglock's deposition. So there was no implicit sort of, you know, while we're collegial, there was no sort of implicit waiver of anybody's discovery obligations. In fact, Ms. Griglock's deposition, when she was directly questioned about damages and said something to the effect of, I don't know, I just rely on my attorneys for that. And I'm happy. Did Wells Fargo ever send counsel a demand to comply with Rule 26A? I don't believe we did send a demand. But we did note in our first summary judgment motion that they had failed to provide this, and we've never gotten a computation of damages. And there was about, I think, two years at least between the first MSJ and the second MSJ. So there was no attempt at that point to comply. And I would note that to this day we don't have a computation of damages and have really no idea what amount of damages they're seeking or what categories those come from other than arguably Mr. Newman's, you know, life of the loan if they could get a 2.3% interest rate. And then just briefly turning to the FDCPA, the motion to dismiss below was based on the fact that Wells Fargo here, HSBC, are not debt collectors. I think that is clear under Schlegel. I think it's clear under the history of this case law and this law that as a mortgage servicer, I mean a mortgage company lender who originates a loan and then continues its ability to service the loan is not a debt collector. The only issue about collecting a debt in somebody else's name has to do with a single proof of claim filing, which listed HSBC as trustee for Wells Fargo, which just includes both of their names. And then finally I would note just another issue of futility for amendment. I'm not at all clear what conduct is really at issue on this FDCPA claim. It talks about the 2012 check cashing issues, the stay violation that's already been fully adjudicated from 2012. The FDCPA has almost universally a one-year statute of limitations. It's just wholly unclear what conduct supposedly underlies this as well. So Wells Fargo originated the loan in 2006. There was foreclosure activity in 2016, three years after HSBC became the beneficial owner. But in the complaint, there's no indication of anything that HSBC did, anything that WFASC, too many letters, did. There's no indication of what conduct really underlies that. It's Wells Fargo, Wells Fargo, Wells Fargo. But under subsection F of the act, there's just no way that Wells Fargo is a debt collector within that meaning. So I'm happy to answer any questions the court may have. What's the status of the property now? Is it still possessed by plaintiff? It is still possessed by plaintiff. She was fortunate to get that crammed down, as it's colloquially called, in 2011 to 360, because the property is now worth north of a million dollars. So however this proceeds, even if it was foreclosure, there's a lot of equity in that property. But they still have possession, and Wells Fargo still has not been able to complete foreclosure of the property. Is foreclosure on hold or pending or been filed or what's that? So I believe it's moving forward. There's no stay in place. Maybe this litigation really is aimed at making the whole thing take longer. We would agree with that.  Thank you very much. Thank you, counsel. We appreciate your audience this morning. You can have one minute, Mr. Griffith. I'll try to hurry.  But let me get straight to it. Now you've got 57 seconds. All right. Anyway, if you turn to page 52 of our opening brief, we have an analysis that shows that, in fact, of the monies that Ms. Griglak did pay, at least $71,000 have been applied to escrow. And so I don't think if you conclude that the excess charges are a valid form of damages, she has been damaged to at least that amount. So finally, in an opening brief on appeal, is this the sum total of the damage claim or is there more? It sounds like there's also more, which all seems to validate the complaint made by Wells Fargo that it's a moving target. They didn't know what the claim against it was. It's not, Your Honor. We disclosed the excess charges damage theory in November of 2018. And when was the lawsuit filed? It was filed in 2017. And so within a year and within four months of the interrogatory response, which we say is the equivalent of the Rule 26A initial disclosure. Absolutely, we plead guilty. We should have done that. But by the time anybody mentioned it, we had already filed an interrogatory response. I had all the information necessary in the Rule 26. I suppose we could have then filed a pro forma Rule 26A disclosure, except that would be elevating form over substance, which I know I don't like to do. And so we have argued ever since that the interrogatory response basically, which was filed in July of 2018, was the sum and substance, the equivalent of the Rule 26A. Okay. Thank you, Mr. Griffiths. Thank you very much. We appreciate your arguments this morning. I appreciate it. Good morning. Okay. Counsel, thank you for your arguments. With that, we will submit the case for decision, and we'll turn to our next case for argument.
judges: PAEZ, CLIFTON, THOMAS